UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE JOHNSTON, <br><br> Plaintiff; <br><br> v. <br><br> JERZEES SPORTS BAR & PIZZERIA, <br><br> Defendant. | **JURY DEMANDED** <br><br> Civil Action <br><br> No. |

**CIVIL ACTION COMPLAINT**

Plaintiff, Michele Johnston, by and through her undersigned counsel, files this Complaint and avers as follows:

**Parties and Jurisdiction**

1. Plaintiff, Michele Johnston ("Plaintiff") is an adult individual residing in Hatboro, Pennsylvania.

2. Upon information and belief, Defendant, Jerzees Sports Bar & Pizzeria ("Defendant") is a business corporation organized by and operating under the laws of the Commonwealth of Pennsylvania and having a principal place of business at 2609 Mt. Carmel Avenue, Glenside, Pennsylvania 19038.

3. At all times material hereto, Plaintiff was employed with and by Defendant at 2609 Mt. Carmel Avenue, Glenside, Pennsylvania 19038.

4. At all times material hereto, Defendant was Plaintiff's employer and acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

5. This action is instituted pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA").

6. Plaintiff exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act and the Pennsylvania Human Relations Act. (*See Exhibit A*; a true and correct copy of the Notice of Rights).

7. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

8. Supplemental jurisdiction over the Plaintiff's state law claim is conferred pursuant to 28 U.S.C. § 1367.

9. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Plaintiff was working in the Eastern District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

**Factual Allegations**

10. Defendant hired Plaintiff in or around April of 2016 as a bartender.

11. During her initial interview for employment, Plaintiff met with two of Defendant's managers, Jackie (last name unknown) and Barry (last name unknown).

12. Barry left in the middle of Plaintiff's interview, and did not show up to her audition shift, during which Plaintiff was told by both customers and Defendant's employees that "it was a shame [Barry] wouldn't hire [Plaintiff], since he only hires young girls."

13. However, as Plaintiff had over thirty (30) years of bartending and management experience, Jackie hired Plaintiff.

14. Following her hire, Plaintiff worked almost exclusively with Jackie, as Barry refused to interact with her.

15. Plaintiff also observed Barry fire another older male employee, going on to state that "[Plaintiff] is next."

16. Upon information and belief, Plaintiff then became Defendant's oldest employee.

17. In or around 2019, Jackie left her employment with Defendant.

18. Following Jackie's departure, Barry assigned an approximately twenty-one (21) year old employee to Jackie's vacant management position.

19. Upon Barry becoming Ms. Johnston's sole manager, she became the target of repeated, discriminatory comments and behavior based upon her age.

20. Plaintiff had endured commentary from customers expressing surprise that she still worked there, as well as comments such as "here comes your replacement" when younger employees were hired.

21. Barry would frequently refuse to show Plaintiff how to do things with the computer system, stating Plaintiff would "never catch on" and that "[Plaintiff] couldn't handle this at her age."

22. Barry repeatedly hired younger, female employees; had Plaintiff train them; and then promoted them to managerial positions.

23. Plaintiff herself was never promoted or offered any managerial position.

24. Upon information and belief, Barry gave keys to the bar to every employee except Plaintiff.

25. Plaintiff was forced to pass along information and ideas to Barry through the younger employees as Barry would refuse to acknowledge anything coming directly from Plaintiff.

26. When Barry would find out that an idea had come from Plaintiff, he would make statements such as "it couldn't have come from [Plaintiff], [her] brain's too old to have come up with that."

27. Plaintiff attempted to inform Barry several times that the cash register was freezing or charging the wrong prices, which Barry brushed off by saying Plaintiff was just "doing the wrong thing" until the younger employees complained as well.

28. Barry often referred to Michele as "old lady" and sat with the younger employees and watched her work while making comments such as, "Hey, old lady, do you need us to carry that for you?", "The old lady needs help with her food", "I know you don't know anything about up here at [the bar]", "Don't anyone run her food, she's old and if she thinks she can handle it then let her". Conversely, Barry helped carry beers, ice, and run food for the younger employees.

29. When older customers would come enter the building, Barry would say, "Michele, your customers are here," or "They must be here to see Michele."

30. Barry purposefully would not invite Plaintiff to any work get-togethers or holiday parties, stating Plaintiff would "put a damper on the party."

31. Despite all this, Plaintiff routinely brought in the most money of Defendant's bartenders.

32. In addition to comments about her age, Barry also gave Plaintiff's usual shifts to the younger employees if they requested them.

33. Therefore, Plaintiff would be stuck with the less-desired shifts.

34. Barry additionally changed Plaintiff's start times without telling her, seemingly just so he could berate her for missing her start time.

35. Because of this behavior, Plaintiff repeatedly tried to call and verify her start time without success, and when she would attempt to show Barry that she did everything she could to make sure she was at work at the correct time, Barry would state, "You need to learn to work a phone" and "Don't worry about it, I got one of the young girls to come in."

36. On another occasion, Barry took Plaintiff off of her regular Friday shift saying he "didn't want her working Fridays anymore" when he found out some of Defendant's regular customers were planning to do something for Plaintiff's birthday during her Friday shift.

37. On another occasion, Plaintiff attempted to take a vacation with approximately three (3) months' notice; however, the employee who agreed to take her shift requested to be off as well, and Barry told Plaintiff she needed to cancel her vacation instead.

38. On another occasion, Plaintiff put in a request to take off a Friday approximately one (1) year in advance; Barry scheduled Plaintiff off every other Friday that month except the one she had requested.

39. During the COVID-19 pandemic, and as a result of restrictions, Defendant began serving patrons outside.

40. Barry told Plaintiff she should "take a few months off because you're too old and can't handle the heat", despite the fact that she had not missed any of her shifts nor complained about the heat, whereas several of the younger employees had called out due to the heat.

41. Barry telephoned every other employee aside from Plaintiff to inform them about drink and food specials, as well as any updated COVID-19 regulations.

42. Plaintiff suggested putting up a whiteboard so the specials and any other changes could be written down for everyone to see, to which Barry replied, "I guess we have to do this because [Plaintiff] can't work her phone."

43. On or about October 12, 2020, Barry terminated Plaintiff's employment for "not cashing her paycheck in a timely manner" which he stated affected his stimulus grant.

44. Barry provided no additional information regarding this reasoning, but did state to Plaintiff that he "finally had a reason to fire [Plaintiff]."

45. At the time of Plaintiff's termination, she was 53 years of age.

46. Upon information and belief, Ms. Johnston was replaced by a younger employee, approximately thirty (30) to thirty-five (35) years of age, and who previously worked for Defendant.

47. Upon information and belief, during her previous employment with Defendant, this employee was found to be stealing multiple times from both customers and other employees and threatened violence against Plaintiff when she complained to Barry. Barry not only never wrote up or disciplined this employee, but promoted her and forced Plaintiff to continue working with her. Said employee only stopped working for Defendant when she became pregnant.

48. At all times material hereto, Defendant was hostile to Plaintiff's age, and terminated her as a result of that animus.

49. As a direct and proximate result of Defendant's conduct in terminating Plaintiff, she sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

### Causes of Action

### Count I
### Unlawful Discrimination Based on Age in Violation of the ADEA

50. By way of reference, Plaintiff repeats and incorporates each and every foregoing paragraph as if fully set forth herein.

51. At all times material hereto, Plaintiff was greater than forty (40) years of age, thereby a member of the class protected by the ADEA.

52. At all times, Plaintiff was qualified to perform the work for which she was hired by Defendant.

53. Upon information and belief, subsequent to her termination, Plaintiff's job duties were subsumed by a younger employee.

54. As set forth above, Plaintiff was treated less favorably than other younger employees.

55. As set forth above, Defendant terminated Plaintiff's employment.

56. Plaintiff's age was the reason for Defendant treating her less favorably than other younger employees and for terminating her employment.

57. As such, Defendant's actions constitute violations of the ADEA.

58. Defendant acted intentionally and willfully, therefore, liquidated damages are warranted.

59. Any non-discriminatory reason(s) offered by Defendant for its actions is pretextual.

60. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

61. Pursuant to the ADEA, Plaintiff demands attorneys' fees and court costs.

**Count II**
**Unlawful Discrimination Based on Age in Violation of the PHRA**

62. By way of reference, Plaintiff repeats and incorporates each and every foregoing paragraph as if fully set forth herein.

63. At all times material hereto, Plaintiff was greater than forty (40) years of age, thereby a member of the class protected by the PHRA.

64. At all times, Plaintiff was qualified to perform the work for which she was hired by Defendant.

65. Upon information and belief, subsequent to her termination, Plaintiff's job duties were subsumed by a younger employee.

66. As set forth above, Plaintiff was treated less favorably than other younger employees.

67. As set forth above, Defendant terminated Plaintiff's employment.

68. Plaintiff's age was the reason for Defendant treating her less favorably than other younger employees and for terminating her employment.

69. As such, Defendant's actions constitute violations of the PHRA.

70. Defendant acted intentionally and willfully.

71. Any non-discriminatory reason(s) offered by Defendant for its actions is pretextual.

72. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

73. Pursuant to the PHRA, Plaintiff demands attorneys' fees and court costs.

### Relief Requested

**WHEREFORE,** Plaintiff, Michele Johnston, demands judgment in her favor and against Defendant, Jerzees Sports Bar & Pizzeria, in an amount in excess of $150,000.00 together with:

A.  Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

B. Liquidated damages;

C. Attorneys' fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

        Respectfully,

        **Law Offices of Eric A. Shore, P.C.**

        */s/ Yvette C. Cave*

By:    Yvette C. Cave, Esq. (PA Atty. ID 329607)
        Two Penn Center
        1500 JFK Boulevard, Suite 1240
        Philadelphia, PA 19102
        T: (610) 355-1999 / F: (215) 944-6125
        YvetteC@EricShore.com

        *Counsel for Plaintiff, Michele Johnston*

Dated: January 25, 2022