IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHELE JOHNSTON,** *Plaintiff,* <br><br> v. <br><br> **JERZEES SPORTS BAR & PIZZERIA** *Defendant.* | **CIVIL ACTION NO. 22-0307** |

### MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                  **January 5, 2024**

Defendant Patrick & Poppers, Inc., d/b/a Jerzee's Sports Bar and Pizzeria ("Jerzee's") seeks summary judgment in this case arising from alleged age discrimination in employment pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq. ECF No. 32. For the reasons outlined below, and because Plaintiff has not adequately demonstrated age discrimination by Defendant, Defendant's Motion for Summary Judgment is granted.

I.       RELEVANT FACTUAL BACKGROUND[1]

Plaintiff interviewed for a bartender/server position at Defendant Jerzee's bar in May 2017. ECF No. 32-1 ¶ 1; ECF No. 33 ¶ 1. Plaintiff was 49 years old at the time. Id. On June 3, 2017, after a training session with Plaintiff, Defendant offered Plaintiff the bartender/server job at Jerzee's. ECF No. 32-1 ¶ 7; ECF No. 33 ¶ 7.

---

[1] Unless otherwise indicated, all facts, taken in the light most favorable to Plaintiff, are derived from Defendant's Statement of Undisputed Material Facts (ECF No. 32) and Plaintiffs' Response to Defendant's Statement of Material Facts (ECF No. 33).

Plaintiff's manager at Jerzee's, Barry Elvidge ("Elvidge") testified that Plaintiff began arriving late within the first three months of work. ECF No. 32-1 ¶ 13, citing Elvidge Dep. 18:1-13, Ex. D; ECF No. 33 ¶ 13. Elvidge further testified that he had many conversations with Plaintiff about her lateness. ECF No. 32, Elvidge Dep. 20:22-21:2, Ex. D. On at least several occasions, Plaintiff texted Defendant to provide notice that she would be showing up late to work, e.g., on Saturday, August 26, 2017, Plaintiff "texted in late" that she was stuck in traffic and on Sunday, February 4, 2017, she texted that she "could be like 15 minutes behind." ECF No. 32-1 ¶¶ 10-11; ECF No. 33 ¶¶ 10-11.

On or about September 9, 2018, Plaintiff signed an Employee Handbook acknowledgement, which stated, in pertinent part:

> Working hours and tardiness. Due to the nature of our business, employees will be expected to work evenings, weekends and Bank or national holidays. Employees should arrive at a minimum of 15 minutes before each shift and must call if they are unable to arrive on time. Employees must arrive READY to work.

ECF No. 32-1, ¶ 16, Ex. G; ECF No. 33 ¶ 16.

On August 21, 2019, Elvidge gave Plaintiff a written warning, following up on a previous oral warning from July 22, 2019, regarding Plaintiff's lateness to work. ECF No. 32-1 ¶ 20; ECF No. 33 ¶ 20. On the August 21, 2019 warning sheet, Elvidge recorded that Plaintiff was 1 ½ hours late on August 17, 2019. ECF No. 32-1 ¶ 20, citing Elvidge Dep. 21:3-12; ECF No. 33 ¶ 20.

In November 2019, Plaintiff reported to a medical provider that she has "problems with concentration and focusing that are interfering with her job as a bartender." ECF No. 32-1 ¶ 23, ECF No. 33 ¶ 23. She reported to medical providers that she was "[a]lways late. Does all different tasks and doesn't focus on tasks until done" and that she is "losing jobs due to not

completing." ECF No. 32-1 ¶ 23, citing Johnston Dep. 9/6/23, 161:13-162:18, Ex. K; ECF No. 33 ¶ 23.

Throughout 2019 and 2020, Plaintiff "chronically, repeatedly continued to text in late to work." ECF No. 32-1 ¶ 24; ECF No. 33 ¶ 24.[2] On May 21, 2020, Plaintiff texted Elvidge, "I'm never leaving, and I'll never be late again," to which Elvidge responds, "I'm taking a picture of your last text." Plaintiff then replies, "already got it tattooed." ECF No. 32-1 ¶ 28; ECF No. 33 ¶ 28.

On October 12, 2020, Elvidge terminated Plaintiff. ECF No. 32-1 ¶ 39; ECF No. 33 ¶ 39. After Plaintiff's termination, Nichole Schmidt O'Neil, who was around 34 years old, came back to work at Jerzee's from pregnancy leave. ECF No. 32-1 ¶ 40, citing Fabiani Decl. ¶ 13, Ex. F; ECF No. 33 ¶ 40. Dawn Andrews, age 58, who had worked with Plaintiff and retired shortly before the Covid pandemic hit, also returned to Jerzee's for seasonal employment. ECF No. 32-1 ¶ 42; ECF No. 33 ¶ 42. Over the course of Plaintiff's employment with Jerzee's, Jerzee's also employed Kevin Doyle, who was in his 60s, and who left his employment due to ailing health concerns as opposed to his age. ECF No. 32-1 ¶ 47-48; ECF No. 33 ¶ 47-48.

## II.   PROCEDURAL HISTORY

Plaintiff filed her Amended Complaint on June 8, 2022, alleging unlawful employment discrimination based on age under the Age Discrimination in Employment Act (the "ADEA") and the Pennsylvania Human Relations Act ("the PHRA"). ECF No. 6. On June 23, 2022, Defendant filed an Answer to Plaintiff's Amended Complaint. ECF No. 9. On October 16, 2023, Defendant filed a Motion for Summary Judgment. ECF No. 32. Plaintiff filed a Response

---

[2] Plaintiff asserts in her Response in Opposition that she did so to "cover her butt" in case she was going to be late. ECF No. 33 ¶ 24.

in Opposition to Defendant's Motion for Summary Judgment on October 30, 2023.  ECF No. 33.  Defendant then filed a Reply on November 1, 2023.  ECF No. 35.

### III. PARTIES' CONTENTIONS

In its Motion for Summary Judgment, Defendant argues that Plaintiff cannot establish an ADEA or a PHRA claim because (1) there is no prima facie case of discrimination alleged, (2) Defendant had a legitimate business reason to terminate Plaintiff, and (3) Plaintiff cannot establish that Defendant's proffered reason for the termination is pretextual.  See ECF No. 32-1 at 12-19.  Defendant also argues that Plaintiff cannot sustain an ADEA claim because the ADEA applies only against employers who have twenty or more employees, and Defendant in this case employed seventeen or eighteen employees in the calendar year of Plaintiff's employment.  Id. at 13.

In her Response, Plaintiff argues that Plaintiff has established a prima facie age discrimination case under the ADEA and PHRA, (2) Defendant's articulated reason for terminating her employment is pretextual, and (3) there are a litany of issues of material fact that are in dispute between the parties.  See ECF No. 33 at 3.  Plaintiff points to statements from her Statement of Material Facts which Defendant Failed to Provide as evidence that Defendant's proffered reason for the termination—Plaintiff's chronic lateness—is pretextual, including:

- "although other employees may have been late for work[,] none of them were ever terminated as [a] result of it."

- "Other employees texted Plaintiff that they'd arrive when they wanted and they were not fired.  Specifically, Dawn texted Plaintiff the following message [on August 7, 2019]: We get there when we do."

- "At least fifteen out of the approximately seventeen employees that worked with Plaintiff were significantly younger than her."

- "Since Plaintiff's termination Defendant has not hired anyone new to work as a bartender or se[r]ver that is over forty years old. Accordingly, all of Plaintiff's replacements have been at least ten years younger than Plaintiff with most of them being at least twenty years younger than Plaintiff."

ECF No. 33 ¶¶ 58-61; Id. at 13-14. Plaintiff additionally points to Defendant's Facebook post(s) "showcasing its young female bartenders" as evidence that "virtually everyone that Defendant has hired after it terminated Plaintiff has been over fifteen years younger than Plaintiff (mostly young women in their early twenties)." Id. at 14.

In its Reply to Plaintiff's Response to Motion for Summary Judgment, Defendant argues that Plaintiff fails to establish that she was qualified for the position held, since showing up on time to cover her shift was a condition of employment. See ECF No. 35 at 2. Defendant asserts that Plaintiff's contention that she was merely letting her colleagues know that she might be late to "cover her butt" in case she was going to be late is disingenuous in light of Plaintiff's own admissions of late arrival, texting that she is running late, stating she "will never be late again" and that she has it "tattooed on her arm," telling her treatment provider that she is always late, and signing off on at least one disciplinary notice for late arrival. Id. at 3.

In response to Plaintiff's contention that she was replaced by younger employees, Defendant points to evidence that three months after Defendant terminated Plaintiff, Defendant rehired Dawn Andrews, who was older than Plaintiff. Id. at 9. Defendant also states that Nicole Schmidt O'Neil, a 34-year old woman who Plaintiff alleges replaced her, was already an employee and that she returned to work from maternity leave. Id. Finally, Defendant points to

5

testimonial evidence to demonstrate that no new persons in Plaintiff's protected class were applying for jobs in Defendant's bar, which typically require long nights, weekends, and holiday work.  Id.; citing ECF No. 32, Decl. of Nisa Fabiani, ¶¶ 15, 16 ("Given the shifts and the hours, we attract a younger demographic of employees, including college students and young people between careers.").

## IV. STAMDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under

Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

V. **DISCUSSION**

A. **No Material Facts in Dispute**

There are no genuine disputes of material fact that preclude granting summary judgment here. Plaintiff asserts that there are "material facts Defendant failed to provide" and includes a list of these facts in her Response:

- Defendant's manager Elvidge "was only somewhat familiar with Defendant's Employee handbook" and only partially adhered to the handbook;
    - Defendant's manager's familiarity with the employee handbook is not at-issue and is not a material fact here.

- "Although other employees may have been late for work none of them were ever terminated as a result of it."
    - Plaintiff provides no evidence that these other employees who "may" have been late for work were <u>chronically</u> late for work, like Plaintiff.

- A text message from another employee, Dawn Andrews, to Plaintiff, saying, "We get there when we do."
    - Despite Plaintiff's contentions, this one text message does not establish that other employees had a pattern or practice of chronic lateness.

- "Since Plaintiff's termination Defendant has not hired anyone new to work as a bartender or se[r]ver that is over forty years old."
    - Plaintiff does not consider Dawn Andrews, discussed above, who was rehired by Defendant and who is older than 40 years old.

See ECF No. 33 ¶¶ 56-61. Plaintiff's alleged additional facts do not establish that other employees, whether in the protected class (40 years or older) or otherwise, had a pattern of lateness and were not terminated despite this lateness. In sum, these alleged facts do not raise a genuine dispute of material fact.

B.  **McDonnell Douglas Burden-Shifting Framework**

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).  The PHRA provides that it is "an unlawful discriminatory practice... [f]or any employer because of the race, color, religious creed, ancestry, [or] age... to refuse to hire or employ or... discharge from employment such individual... or to otherwise discriminate against such individual... with respect to compensation, hire, tenure, terms, conditions or privileges of employment...." 43 Pa. Stat. Ann. § 955(a).

Where, as here, Plaintiff relies on circumstantial evidence rather than direct evidence of discrimination to support her claims, the McDonnell Douglas burden-shifting framework applies. McDonnell Douglas Corp v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  This burden-shifting framework applies to both ADEA and PHRA claims.  See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015) (determining that "the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," and therefore "present[ing] a single analysis for [Plaintiff's] claims under both statutes"); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between…ADEA and PHRA claims because…the same analysis is used for both.").

Defendant asserts at the outset that Plaintiff cannot succeed on her ADEA claim because the ADEA applies only to employers with 20 or more employees, and Defendant employed approximately seventeen or eighteen employees during the relevant time period.  See ECF No. 32-1 at 13, citing 29 U.S.C. § 630(b) ("The term 'employer' means a person engaged in an

8

industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.") Plaintiff does not respond to this argument at all, but she does acknowledge in her Response to Defendant's Statement of Material Facts that Defendant employed seventeen or eighteen employees.[3] This Court agrees with Defendant that the ADEA applies only to employers with 20 or more employees, and thus relief is not available to Plaintiff under the ADEA since there is no dispute between the parties that Defendant employed fewer than twenty employees. This Court proceeds with the McDonnell Douglas burden-shifting framework analysis since this framework applies, in any event, to Plaintiff's PHRA claim. See 43 Pa. Stat. Ann. § 954(b) (defining "employer" under the PHRA to include "any person employing four or more persons within the Commonwealth").

Under the McDonnell Douglas burden-shifting framework, Plaintiff must first establish a prima facie case of discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'" Id. (quoting Duffy v. Paper Magic Grp., 265 F.3d 163, 167 (3d Cir. 2001). If Plaintiff fails to raise a genuine dispute of material fact as to any element of her prima facie case, summary judgment in favor of Defendant is warranted. See Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 580 (3d Cir. 1996).

If Plaintiff establishes her prima facie case, the burden of production shifts to Defendant to "articulate a legitimate[,] nondiscriminatory reason for the adverse employment action."

---

[3] In the Statement of Facts and Response to Defendant's Statement of Facts, respectively, Plaintiff and Defendant agree that "throughout [Plaintiff's] employment, Jerzee's employed approximately seventeen to eighteen employees." See ECF No. 32-1 ¶ 49; ECF No. 33 ¶ 49.

Jones v. Sch. Dist. Of Phila., 198 F.3d 403, 412 (3d Cir. 1999) (citation omitted). Defendant does not need to prove the articulated reason was the actual reason for Plaintiff's termination; rather, Defendant need only provide evidence that would allow the factfinder to determine that the termination was for nondiscriminatory reasons. Willis, 808 F.3d at 644. If Defendant meets its burden, then the burden of production shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendant's proffered legitimate, nondiscriminatory reason is pretextual. Id.

This Court will examine each of these three burden-shifting framework steps in turn.

**1. Prima Facie Case**

To establish a prima facie case of age discrimination—the first step of the McDonnell Douglas burden-shifting framework—Plaintiff must demonstrate that she was (1) over the age of 40, (2) subject to an adverse employment action, (3) qualified for her position, and (4) that the adverse employment action was because of her age. Fowler v. AT&T, Inc., 19 F.4th 292, 299 (3d Cir. 2021) (internal citations omitted).

Here, since both parties agree that Plaintiff was over the age of 40 and subject to an adverse employment action (termination), only the third and fourth elements are in dispute. With respect to the third element, Defendant argues that Plaintiff was not qualified for her position because showing up to her job on time was necessary to be qualified to hold the position, and Plaintiff routinely failed to show up on time. Defendant points to a Handbook Acknowledgement that Plaintiff signed on September 8, 2018, which states:

> Employees should arrive at a minimum of 15 minutes before each shift and must call if they are unable to arrive on time. Employees must arrive READY to work.

ECF No. 35 at 2; ECF No. 32, Ex. G. Defendant argues that Plaintiff "continually violated time and attendance provisions" and that Plaintiff reported to a medical provider that Plaintiff has "problems that are interfering with her job as a bartender" and that she was "always late, does all

10

different tasks and doesn't focus on tasks until done and that she loses jobs due to not completing things." ECF No. 35 at 2.  Plaintiff signed a disciplinary notice for being late on August 21, 2019.  Plaintiff sent numerous texts throughout the course of her employment with Defendant indicating that she was running late.  On May 21, 2020, she texted manager Elvidge that "I'll never be late again" and stated that she "already got it tattooed on her arm [not to be late]."  Id. at 3.  Plaintiff's argument that her texts were merely letting people know that she might be late is unavailing in light of the overwhelming evidence that Plaintiff routinely showed up late to her employment.

With respect to the fourth element of the prima facie case, Plaintiff cannot establish that the adverse employment action was due to her age.  The fourth element of the prima facie case is met where plaintiff proves that she was "ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."  Willis, 808 F.3d at 644 (3d Cir. 2015).  "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  Id. (internal quotations omitted).  The prima facie inquiry is flexible and "depends on the circumstances of the case."  Massarksy v. Gen. Motors Corp., 706 F.2d 111, 118 n.13 (3d Cir. 1983).

Here, Plaintiff cannot show that she was replaced by another employee sufficiently younger to support an inference of discriminatory motive.  During Plaintiff's employment, Defendant employed three people over the age of fifty out of a staff of approximately seventeen or eighteen servers/bartenders.  When Plaintiff was terminated from her employment, she was replaced by, among others, an employee who was 59 years old.  Plaintiff testified herself in deposition that she "heard" that Dawn Andrews, currently 59 years old, was rehired in or about

January 2020, and stated "that was pretty convenient…that she comes back after I'm gone…[b]ecause boy, we need to fill that slot of age and it would be perfect timing."  ECF No. 32, Ex. A, Johnson Dep. 92:15-93:1.  This testimony suggests that Plaintiff acknowledges that she was replaced by another member of the protected class.  For this reason, Plaintiff has not established a prima facie case of age discrimination.

### 2. Legitimate, Nondiscriminatory Reasons for Termination

Even if Plaintiff *had* established a prima facie case of age discrimination, her claims still ultimately fail under the remaining steps of the McDonnell Douglas framework.  At the second step of the McDonnell Douglas framework, Defendant points to evidence of Plaintiff's routine lateness as a legitimate, nondiscriminatory reason for terminating Plaintiff's employment:

- Plaintiff signed Defendant's Handbook, which indicates that arriving on time is an expectation of the job;
- Defendant warned Plaintiff about her chronic lateness, including in a written notice signed by Plaintiff;
- Plaintiff admits her pattern of lateness, even stating that she would "never be late again" and that she "already got it tattooed."

ECF No. 32-1 at 16.

This Court finds this evidence sufficient for a reasonable jury to conclude that Defendant terminated Plaintiff for reasons other than her age.

### 3. Pretext

To make a showing of pretext under the third step of the McDonnell Douglas burden-shifting framework, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reasons;

12

or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." Burton, 707 F.3d at 427. The Plaintiff must point to evidence in the record that indicates such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotations omitted). Alternatively, the Plaintiff may establish pretext by "presenting evidence that would allow a reasonable jury to conclude that discrimination was the 'but-for' cause of the adverse employment decision." Willis v. UPMC Children's Hosp. of Pittsburgh, 2015 WL 539995 at *5 (W.D.Pa. Feb. 10, 2015), aff'd, Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015).

In assessing pretext, it is not a court's role to "rul[e] on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Willis, 808 F.3d at 647 (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (internal quotations omitted).

Here, Plaintiff has not met her burden of establishing that Defendant's reason for terminating her is pretextual. While Plaintiff asserts that her manager made stray remarks about age, this alone is insufficient to establish age discrimination. Plaintiff argues that she was replaced by Nicole Schmidt O'Neil, who was around thirty-four-years-old, and she asserts that "virtually everyone that Defendant has hired after it terminated Plaintiff has been over fifteen years younger," without acknowledging (1) that Nichole Schmidt O'Neil was returning to work from maternity leave and (2) Defendant also rehired Dawn Andrews, who was older than

Plaintiff and also within the protected class. ECF No. 33 at 14.[4] Plaintiff's assertion that Defendant's articulated reasons are pretextual is unsuccessful because "she does not point to evidence that demonstrates [Defendant] did not in fact rely on its articulated reasons when terminating her employment." Willis, 808 F.3d at 647. Therefore, Plaintiff fails to establish pretext and cannot succeed on her age discrimination claim under the McDonnell Douglas burden-shifting framework.[5]

## VI. ORAL ARGUMENT

This Court held oral argument on Defendant's Motion for Summary Judgment on January 4, 2024 and provides a brief summary and analysis of the parties' arguments below.

During oral argument, Plaintiff's counsel reiterated, as evidence of the discrimination against Plaintiff, that Plaintiff was replaced by Nicole Schmidt, a younger woman that was not in the protected class. In response, Defendant's counsel asserted that Nicole Schmidt did not replace Plaintiff; rather, Nicole Schmidt returned to her prior position at Defendant's bar from maternity leave. Defendant's counsel cited the undisputed fact that Plaintiff's replacement was Dawn Andrews, a 59-year-old woman who was re-hired from retirement, and as such, Plaintiff's replacement provides no evidence of discrimination. This Court agrees with Defendant.

---

[4] Plaintiff cites Defendant's alleged Facebook post(s) "showcasing its young female bartenders" as evidence that "virtually everyone that Defendant has hired after it terminated Plaintiff has been over fifteen years younger than Plaintiff (mostly young women in their early twenties)." See ECF No. 33 at 14; Ex. F, G, E and D. These photos are not date-stamped and contain insufficient information to allow this Court to determine the identity of the individuals contained therein. As such, these photographs will not be considered reliable evidence for purposes of this Motion. Plaintiff also provides an investigative report containing photos of young women (presumably bartenders) from September 2023, which is approximately 3 years after Plaintiff was terminated by Defendant and therefore temporally remote. For this reason, the photos in the investigative report will not be considered.

[5] Defendant further argues that the fact that manager Elvidge was the "same actor" who hired and fired Plaintiff rebuts any allegation of discrimination. ECF No. 32-1 at 19. Since this Court agrees with Defendant that Plaintiff fails to establish age discrimination under the McDonnell Douglas burden-shifting framework, this Court need not address this additional argument.

When asked about evidence of pretext, Plaintiff's counsel argued that (1) Defendant did not hire anyone new in the protected class after Plaintiff's termination and (2) manager Elvidge did not terminate any other employees for lateness even though other employees had a group chat in which one employee wrote, "we get there when we do."  Neither argument has merit.  With respect to (1), Defendant rehired Dawn Andrews (59), as discussed above and at length in this Memorandum.  With respect to (2), one employee texting in a group thread "we get there when we do" does not establish that other employees had a pattern or practice of <u>chronic</u> lateness, as Plaintiff did.

When asked about evidence of discriminatory intent on the part of Defendant, Plaintiff's counsel pointed to stray remarks made against Plaintiff.  Plaintiff's counsel also argued that Elvidge did not take Plaintiff out to lunch, as he did with other employees, and that this fact indicates he treated Plaintiff less favorably.  Defendant opposed Plaintiff's argument, noting that Elvidge gave Plaintiff a personal loan of $1,000, which he did not provide to other employees, and that Plaintiff sent Elvidge a text message thanking him for being patient and good to her.  This Court finds insufficient evidence to establish any discriminatory intent on the part of Defendant.

In sum, there is no evidence sufficient for this Court to find that Plaintiff met her burden of establishing pretext, or indeed, that she met her burden of establishing a prima facie case of age discrimination.

## VII.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

O:\CIVIL 22\22-307 Johnston v. Jerzees Sports Bar\Johnston v. Jerzees 22-307 MSJ Memorandum.docx